**31**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

v.

| | |
|---|---|
| D-11 | FREDERICK TILL JACKSON, a.k.a. "Big Fred," |
| D-12 | SARDAR ASHRAFKHAN, a.k.a. "Dr. Khan," |
| D-13 | AHAB ELMADHOUN, R.Ph., |
| D-14 | WALEED YAGHMOUR, R.Ph., |
| D-15 | DEEPAK KUMAR, |
| D-16 | JOHN STEPHEN CHECK, Sr., |
| D-17 | DAVID VEZZOSSI, |
| D-18 | DR. ADELFO PAMATMAT, M.D., |
| D-19 | DR. JOHN GERALT, D.O., |
| D-20 | DR. MALIK DABABNEH, M.D., |
| D-21 | DR. PAUL KELLY, M.D., |
| D-22 | DR. RAVI IYER, M.D., |
| D-23 | DR. MUHAMMAD AHMED, |
| D-24 | TIMOTHY SPENCER, P.A., |
| D-25 | KRINA PATEL, R.Ph., |
| D-26 | SANJAY PATEL, |
| D-27 | JAYSHRIBEN GANDHI, R.Ph., |
| D-28 | GUARANG GANDHI, |
| D-29 | MOHAMMAD MIAN, a.k.a. "Omar," |
| D-30 | FARAJ GHABAG, |
| D-31 | JAVAR MYATT-JONES, a.k.a "Dr. Jones," |
| D-32 | TIFFANY WALKER, a/k/a "Mary Reed," |
| D-33 | SIERRA WALKER, a/k/a "Tosha," |
| D-34 | TONEY TAYLOR, |
| D-35 | JIMMY FOSTER, |
| D-36 | JAMES BLAKE, |
| D-37 | TROY IVORY, |
| D-38 | JACKIE RENEE IVORY, |
| D-39 | ERIC HESTER, |
| D-40 | ALFORNIA JOHNSON, a/k/a "Con", a/k/a "Alex" and "ShiCon," |
| D-41 | COREY WILLIAMS, a/k/a "CoCo," |
| D-42 | RONNIE MOSES, a/k/a "Red," |
| D-43 | PHILIP BURNETT, a/k/a "Frank", and "Frank Burns," |

CRIMINAL NO. 11-CR-20551

HON. ROBERT H. CLELAND

VIOLATIONS: 21 U.S.C.§§841(a)(1), 846
18 U.S.C.§1347, 1349
18 U.S.C.§1957
18 U.S.C.§922(g)(1)

FILED

2013 JAN 10 P 4: 37

U.S. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

D-44   GARLAND ARTHUR HOLMAN, a/k/a "G-Boy,"
D-45   JAMALL GIBSON, a/k/a "Mal,"
D-46   FELICIA JACKSON,
D-47   AYESHA McCRAY,
D-48   CHERISH LEWIS,
D-49   ROBERT SCOTT DIALS,
D-50   WILLIE DAVID JACKSON,  a/k/a "Lil' Dave,"
D-51   LANCE HATTEN,
D-52   JOSH BARNES,
D-53   NATHAN REED, a/k/a "Reed,"
D-54   WILLIAM ASHLEY SMITH, a/k/a "Cash,"

                              Defendants.
_____/

## SECOND SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

### GENERAL ALLEGATIONS

Beginning on or about January, 2008, a scheme and pattern of illegal conduct involving the unlawful acquiring and distribution of prescription drug controlled substances, fraudulent health care billings, money laundering, unlawful bribes and kickbacks, and the illegal possession of firearms was formed.  The named defendants and others joined and participated in this activity at different times, played different roles, operated in multiple locations, and engaged in different aspects of the overall scheme.

Purported medical practices and medical clinics were organized and operated, including Compassionate Care Doctors (Compassionate), Preferred Home Health Care (Preferred), Visiting Doctors for America (VDA), Palace Home Health Care (Palace), Delta Home Health Care (Delta) and Reliance Home Care (Reliance).  A fundamental purpose of these entities was to create prescriptions for controlled substances that could be filled at pharmacies, especially at cooperating pharmacies.  The purpose of filling the controlled

2

substance prescriptions was not for the legitimate treatment of patients, but rather to obtain controlled substances that could be sold at a substantial profit on the illegal street market, both in the Detroit area and elsewhere.

The primary prescription drug controlled substances illegally prescribed and distributed were OxyContin (oxycodone), a Schedule II controlled substance; Opana and Opana ER (oxymorphone), a Schedule II controlled substance; hydrocodone bitartrate (Vicodin, lortab, APAP), a Schedule III controlled substance; alprazolam (Xanax), a Schedule IV controlled substance; and codeine/promethazine cough syrup, a Schedule V controlled substance. These drugs were in high demand in the illegal street market. Dosage units of Oxycontin 80 mg sold for $20 to $60 or more in the street market during the time frame of this conspiracy. The five doctors named in this Indictment prescribed a combined total of more than 500,000 dosage units of OxyContin 80 mg, carrying a conservative street value of more than $10 million for that drug alone. A cooperating pharmacy, Sav-Max, ordered over 700,000 dosage units of Oxycontin 80 mg in a 21 month period, carrying a conservative street value of $14 million for that drug alone. Over 2 million dosage units of Vicodin, over 1 million dosage units of Xanax and more than 1,000 liters of cough syrup with codeine were prescribed by the doctors in this indictment, with additional amounts prescribed by other cooperating doctors.

The owners and managers of the purported medical practices and clinics included SARDAR ASHRAFKHAN, DEEPAK KUMAR, JOHN CHECK and DAVID VEZZOSSI. When JOHN CHECK and DAVID VEZZOSSI operated Preferred, they hired and directed

3

DR. PAUL KELLY. When DR. PAUL KELLY indicated a reluctance to continue to prescribe excessive amounts of controlled substances at Preferred, both CHECK and VEZZOSSI agreed that he would have to continue to write the controlled substances or be fired. DR. KELLY then agreed to continue working and writing controlled substance prescriptions. At various times the owners and managers employed different doctors, including DR. ADELFO PAMATMAT, DR. JOHN GERALT, DR. MALIK DABABNEH, DR. PAUL KELLY, DR. RAVI IYER, DR. MUHAMMAD AHMED, and physician's assistant TIMOTHY SPENCER. Each of these prescribers knowingly prescribed prescription drug controlled substances outside the course of legitimate medical practice and for no legitimate medical purpose, in furtherance of the scheme. MOHAMMAD MIAN was employed by DEEPAK KUMAR at Palace to assist him in his illegal activities, including assisting during "patient parties" and dealing with patient recruiters in order to obtain new beneficiaries for the scheme.

The doctors employed in these businesses generated income by writing controlled substance prescriptions or by signing blank prescriptions that would be completed as controlled substance prescriptions by a conspirator. The prescriptions were issued after either a cursory examination by the prescribing doctor or without any examination by the prescribing doctor. At times, unlicensed graduates of medical schools, who were not legally authorized to prescribe controlled substances or practice as doctors, would pose as doctors and conduct the limited examinations. The unlicensed medical graduates (UMG) included FARAJ GHABAG and JAVAR MYATT-JONES. A chart would be prepared by the UMG

4

or another person, and the medical doctor would sign the chart and prescription as if he had actually examined the patient, when in fact he had not conducted such an examination. At other times during the scheme, patient names would simply be provided and the doctors would write prescriptions and/or patient charts without examining any purported patient at all.

The controlled substance prescriptions would not be provided to the purported patient, but rather to the patient recruiter or marketer responsible for obtaining the patient or the patient's identification information. The patient recruiter or marketer would fill the controlled substance prescriptions at a pharmacy, usually a cooperating pharmacy. Cooperating pharmacies included Sav-Max Pharmacy (pharmacist AHAB ELMADHOUN), Sav-Mart Pharmacy (pharmacist WALEED YAGHMOUR), Atrium Pharmacy (pharmacist KRINA PATEL and manager SANJAY PATEL), Caremax Pharmacy (pharmacist JAYSHRIBEN GANDHI and manager GAURANG GANDHI) and others.

Once the recruiter or marketer obtained the controlled substance from the pharmacy, the drugs would be transferred and sold on the illegal street market, usually through a network of controlled substance distributors. Some members of the distribution network would remit the proceeds of the controlled substance sales via electronic transfer. Persons involved as drug distributors and/or patient recruiters included FREDERICK JACKSON Sr., JAMALL GIBSON, a/k/a "Mal", FELICIA JACKSON, AYESHA McCRAY, TIFFANY WALKER, a/k/a "Mary Reed", SIERRA WALKER, a/k/a "Tosha", TONEY TAYLOR, JIMMY FOSTER, JAMES BLAKE, ERIC HESTER, TROY IVORY, and JACKIE IVORY.

Patients with Medicare or Medicaid cards were sought to participate in this scheme. Payments to the patient were in the form of cash or controlled substances. The medical practice would sometimes pay a kickback to the patient recruiter on a per-patient basis. On other occasions, the controlled substances obtained by the patient recruiter were the only compensation. The recruiter would in turn pay the fake patients for cooperating in the scheme, either in the form of cash or controlled substances. The "doctor visit" and various unnecessary medical tests or procedures, which may or may not have been performed, would be billed to Medicare or another health insurance program. Billing for a more expensive procedure than the one actually conducted, referred to as "upcoding," also took place. This included the practice of billing for a more expensive doctor visit in the patient's home, when the patients had instead been brought to a central location by a driver in order to see the doctor, unlicensed medical graduate or other person posing as a doctor.

In addition, both the controlled substances and non-controlled "maintenance" medications would be billed to health care benefit programs by the pharmacies. This "maintenance medication" was used in order to make the doctor's prescribing practices appear more legitimate by reducing the percentage of controlled substance prescriptions. The adding of maintenance medications also increase the profits made by the cooperating pharmacies. A list of preferred "maintenance medications" was supplied by some of the pharmacies to the doctor's office. If the non-controlled medication was not necessary for the patient and was not picked up, the pharmacy would return the drug to the shelves of the pharmacy and keep the entire amount billed to the insurance company for the expensive

6

maintenance drugs.

Billings to the Medicare program for medically unnecessary patient services during the course of this conspiracy exceeded $20 million. Additional billings to the Medicare program for medically unnecessary prescription drug medications during the course of this conspiracy exceeded $1.5 million.

Purported patients were falsely declared "homebound" and referred to home health care and physical therapy companies, which would render medically unnecessary services and/or bill for services not actually rendered. Galaxy Home Health Services ("Galaxy") and Palace Home Health Care (Palace) were two of the cooperating companies engaged in this aspect of the scheme. A kickback or bribe would result from these unnecessary referrals, either in the form of cash or in the form of providing the patient or patient identifying information to the purported medical practice. At times cooperating pharmacies also agreed to pay kickbacks to patient recruiters or marketers, as well as paying kickbacks to the purported medical practices, in exchange for bringing prescriptions to be filled at their pharmacy.

It was the role of FREDERICK JACKSON Sr., a/k/a "Big Fred", JAMALL GIBSON, a/k/a "Mal", FELICIA JACKSON, AYESHA McCRAY, TIFFANY WALKER, a/k/a "Mary Reed", SIERRA WALKER, a/k/a "Tosha", TONEY TAYLOR, JIMMY FOSTER, JAMES BLAKE, ERIC HESTER, TROY IVORY, and JACKIE RENEE IVORY to serve as patient recruiters or marketers who recruited and maintained a cadre of healthcare insurance

beneficiaries to become nominee or "fake" patients in order to obtain an inventory of controlled substances for illegal street trafficking.

It was the role of SARDAR ASHRAFKHAN to own and operate Compassionate Doctors, later known as Compassionate Care (Compassionate) which was a home health agency which purported to provide health services to patients and employed physicians and physician's assistants. It was further the role of SARDAR ASHRAFKHAN to demand and receive kickbacks, bribes, and other inducements from complicit pharmacists and pharmacies including but not limited to AHAB ELMADHOUN and Sav-Max Pharmacy and WALEED YAGHMOUR and Sav-Mart Pharmacy in exchange for referring controlled substance prescriptions generated from Compassionate. It was the role of pharmacists AHAB ELMADHOUN and WALEED YAGHMOUR to offer and provide kickbacks, bribes, and other inducements to SARDAR ASHRAFKHAN and Compassionate for the purpose of inducing SARDAR ASHRAFKHAN to direct medically unnecessary prescriptions to Sav-Max Pharmacy and Sav-Mart Pharmacy so that the relevant Medicare, Medicaid, and private insurers would be billed and/or cash obtained from the patient recruiter.

It was the role of ALFORNIA JOHNSON, a/k/a "Con", a/k/a "Alex", and a/k/a "ShiCon", PHILIP BURNETT, a/k/a "Frank", and "Frank Burns", RONNIE MOSES, a/k/a "Red", COREY WILLIAMS, a/k/a "CoCo", WILLIAM ASHLEY SMITH, a/k/a "Cash", ROBERT SCOTT DIALS, and CHERISH LEWIS to serve as couriers who transported Oxycontin (Oxycodone) pills from the Eastern District of Michigan to Portsmouth, Ohio, and elsewhere, and would sell the pills within these destination locations. It was the role of

8

WILLIE DAVID JACKSON, a/k/a "Lil' Dave", to serve as a distributor of pills who transported nominee patients to and from the pharmacies.

It was the role of GARLAND HOLMAN, to facilitate the sale of Oxycontin by serving as a nominee in the remittal of funds, derived from Oxycontin sales, via electronic wire transfer.

It was the role of LANCE HATTEN, JOSH BARNES, and NATHAN REED, a/k/a "Reed" to participate as a member of the distribution network in Portsmouth, Ohio, by arranging transportation of the couriers in Portsmouth, Ohio; and by arranging lodging for the drivers and/or couriers who traveled from the Eastern District of Michigan with quantities of Oxycontin (oxycodone) for distribution in Portsmouth, Ohio, and elsewhere; as well as by sending or otherwise causing the remittal of funds derived from Oxycontin sales, via electronic wire transfer.   It was also part of the role of LANCE HATTEN, JOSH BARNES, and NATHAN REED, a/k/a "Reed" to obtain quantities of Oxycontin (Oxycodone) pills from the drivers and/or couriers who transported the pills to them in Portsmouth, Ohio, for them to sell the Oxycontin (oxycodone) pills to others.

These general allegations are adopted and incorporated in each count of this indictment.

## COUNT ONE
### (21 U.S.C. §§ 841(a)(1), 846- Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances)

**D-11   FREDERICK TILL JACKSON, a.k.a. "Big Fred"**
**D-12   SARDAR ASHRAFKHAN, a.k.a. "Dr. Khan"**
**D-13   AHAB ELMADHOUN, R.Ph.**

D-14   WALEED YAGHMOUR, R.Ph.
D-15   DEEPAK KUMAR
D-16   JOHN STEPHEN CHECK, Sr.
D-17   DAVID VEZZOSSI
D-18   DR. ADELFO PAMATMAT, M.D.
D-19   DR. JOHN GERALT, D.O.
D-20   DR. MALIK DABABNEH, M.D.
D-21   DR. PAUL KELLY, M.D.
D-22   DR. RAVI IYER, M.D.
D-23   DR. MUHAMMAD AHMED
D-24   TIMOTHY SPENCER, P.A.
D-25   KRINA PATEL, R.Ph.
D-26   SANJAY PATEL
D-27   JAYSHRIBEN GANDHI, R.Ph.
D-28   GUARANG GANDHI
D-29   MOHAMMAD MIAN, a.k.a. "Omar"
D-30   FARAJ GHABAG
D-31   JAVAR MYATT-JONES, a.k.a "Dr. Jones"
D-32   TIFFANY WALKER, a/k/a "Mary Reed"
D-33   SIERRA WALKER, a/k/a "Tosha"
D-34   TONEY TAYLOR
D-35   JIMMY FOSTER
D-36   JAMES BLAKE
D-37   TROY IVORY
D-38   JACKIE RENEE IVORY
D-39   ERIC HESTER
D-40   ALFORNIA JOHNSON, a/k/a "Con", a/k/a "Alex" and "ShiCon"
D-41   COREY WILLIAMS, a/k/a "CoCo"
D-42   RONNIE MOSES, a/k/a "Red"
D-43   PHILIP BURNETT, a/k/a "Frank", and "Frank Burns"
D-44   GARLAND ARTHUR HOLMAN, a/k/a "G-Boy"
D-45   JAMALL GIBSON, a/k/a "Mal"
D-46   FELICIA JACKSON
D-47   AYESHA McCRAY
D-48   CHERISH LEWIS
D-49   ROBERT SCOTT DIALS
D-50   WILLIE DAVID JACKSON,  a/k/a "Lil' Dave"
D-51   LANCE HATTEN
D-52   JOSH BARNES
D-53   NATHAN REED, a/k/a "Reed"
D-54   WILLIAM ASHLEY SMITH, a/k/a "Cash"

That beginning on or about January, 2008, and continuing as to some conspirators until on or about the date of this indictment, in the Eastern District of Michigan, Southern Division, and Ohio and elsewhere, FREDERICK TILL JACKSON, a.k.a. "Big Fred," SARDAR ASHRAFKHAN, a.k.a. "Dr. Khan," AHAB ELMADHOUN, R.Ph., WALEED YAGHMOUR, R.Ph., DEEPAK KUMAR, JOHN STEPHEN CHECK, Sr., DAVID VEZZOSSI, DR. ADELFO PAMATMAT, M.D., DR. JOHN GERALT, D.O., DR. MALIK DABABNEH, M.D., DR. PAUL KELLY, M.D., DR. RAVI IYER, M.D., DR. MUHAMMAD AHMED, TIMOTHY SPENCER, P.A., KRINA PATEL, R.Ph., SANJAY PATEL, JAYSHRIBEN GANDHI, R.Ph., GUARANG GANDHI, MOHAMMAD MIAN, a.k.a. "Omar," FARAJ GHABAG, JAVAR MYATT-JONES, a.k.a "Dr. Jones," TIFFANY WALKER, a/k/a "Mary Reed," SIERRA WALKER, a/k/a "Tosha," TONEY TAYLOR, JIMMY FOSTER, JAMES BLAKE, TROY IVORY, JACKIE RENEE IVORY, ERIC HESTER, ALFORNIA JOHNSON, a/k/a "Con", a/k/a "Alex" and "ShiCon," COREY WILLIAMS, a/k/a "CoCo," RONNIE MOSES, a/k/a "Red," PHILIP BURNETT, a/k/a "Frank", and "Frank Burns," GARLAND ARTHUR HOLMAN, a/k/a "G-Boy," JAMALL GIBSON, a/k/a "Mal," FELICIA JACKSON, AYESHA McCRAY, CHERISH LEWIS, ROBERT SCOTT DIALS, WILLIE DAVID JACKSON, a/k/a "Lil' Dave," LANCE HATTEN, JOSH BARNES, NATHAN REED, a/k/a "Reed," and WILLIAM ASHLEY SMITH, a/k/a "Cash," Defendants, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with each other, as well as other persons not named in this Indictment, to commit offenses against the United States, that is, to knowingly, intentionally and unlawfully distribute and possess with intent to distribute controlled substances, including but not limited to, the Schedule II drugs OxyContin (oxycodone) and Opana/OpanaER (oxymorphone); the Schedule III drugs

11

Viccodin, Viccodin ES, Lortab (hydrocodone bitartrate); the Schedule IV drug Xanax

(Alprazolam); and the Schedule V drug cough syrup with codeine (Promethazine). These

prescription drug controlled substances were distributed outside the course of usual medical

practice and for no legitimate medical purpose, all in violation of Title 21, United States

Code, Sections 846, 841(a)(1).

## COUNT TWO
(18 U.S.C. §§ 1347, 1349- Health Care Fraud Conspiracy)

| | |
|---|---|
| D-11 | FREDERICK TILL JACKSON, a.k.a. "Big Fred". |
| D-12 | SARDAR ASHRAFKHAN, a.k.a. "Dr. Khan" |
| D-13 | AHAB ELMADHOUN, R.Ph. |
| D-14 | WALEED YAGHMOUR, R.Ph. |
| D-15 | DEEPAK KUMAR |
| D-16 | JOHN STEPHEN CHECK, Sr. |
| D-17 | DAVID VEZZOSSI |
| D-18 | DR. ADELFO PAMATMAT, M.D. |
| D-19 | DR. JOHN GERALT, D.O. |
| D-20 | DR. MALIK DABABNEH, M.D. |
| D-21 | DR. PAUL KELLY, M.D. |
| D-22 | DR. RAVI IYER, M.D. |
| D-23 | DR. MUHAMMAD AHMED |
| D-24 | TIMOTHY SPENCER, P.A. |
| D-25 | KRINA PATEL, R.Ph. |
| D-26 | SANJAY PATEL |
| D-27 | JAYSHRIBEN GANDHI, R.Ph. |
| D-28 | GUARANG GANDHI |
| D-29 | MOHAMMAD MIAN, a.k.a. "Omar" |
| D-30 | FARAJ GHABAG |
| D-31 | JAVAR MYATT-JONES, a.k.a "Dr. Jones," |
| D-32 | TIFFANY WALKER, a/k/a "Mary Reed" |
| D-33 | SIERRA WALKER, a/k/a "Tosha" |
| D-34 | TONEY TAYLOR |
| D-35 | JIMMY FOSTER |
| D-36 | JAMES BLAKE |
| D-37 | TROY IVORY |
| D-38 | JACKIE RENEE IVORY |
| D-39 | ERIC HESTER |
| D-45 | JAMALL GIBSON, a/k/a "Mal" |
| D-46 | FELICIA JACKSON |

**D-47   AYESHA McCRAY**

That beginning on or about January, 2008, and continuing as to some conspirators until on or about the date of this indictment, in the Eastern District of Michigan, Southern Division, and elsewhere, FREDERICK TILL JACKSON, a.k.a. "Big Fred,"   SARDAR ASHRAFKHAN, a.k.a. "Dr. Khan,"AHAB ELMADHOUN, R.Ph., WALEED YAGHMOUR, R.Ph., DEEPAK KUMAR, JOHN STEPHEN CHECK, Sr., DAVID VEZZOSSI, DR. ADELFO PAMATMAT, M.D., DR. JOHN GERALT, D.O., DR. MALIK DABABNEH, M.D., DR. PAUL KELLY, M.D., DR. RAVI IYER, M.D., DR. MUHAMMAD AHMED, TIMOTHY SPENCER, P.A., KRINA PATEL, R.Ph., SANJAY PATEL, JAYSHRIBEN GANDHI, R.Ph., GUARANG GANDHI, MOHAMMAD MIAN, a.k.a. "Omar," FARAJ GHABAG, JAVAR MYATT-JONES, a.k.a "Dr. Jones," JAMALL GIBSON, a/k/a "Mal", FELICIA JACKSON, AYESHA McCRAY, TIFFANY WALKER, a/k/a "Mary Reed", SIERRA WALKER, a/k/a "Tosha", TONEY TAYLOR, JIMMY FOSTER, JAMES BLAKE, ERIC HESTER, TROY IVORY, and JACKIE RENEE IVORY, Defendants, did willfully, with the specific intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others, both known and unknown to the Grand Jury, to violate Title 18 United States Code Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and private insurance plans, and to obtain, by means of materially false and fraudulent pretenses , representations, and promises, money and property

13

owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

It was the purpose of the conspiracy for the defendants and others to unlawfully enrich themselves by, among other things, (a) submitting false and fraudulent claims to Medicare, Medicaid, and private insurers for prescription medication, physician office visits, physician home visits, and other services; (b) offering and paying kickbacks and bribes to Medicare and Medicaid beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare and Medicaid beneficiary numbers by the conspirators as the bases of claims filed for prescription medication and other services; (c) soliciting and receiving kickbacks and bribes in return for arranging for the furnishing of services for which payment may be made by Medicare and Medicaid by providing their Medicare and Medicaid beneficiary numbers, which formed the basis of claims filed for prescription medication, physician home visits, physician office visits, and other services; (d) concealing the submission of false and fraudulent claims to Medicare, Medicaid, and private insurers, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks; and (e) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### The Health Insurance Programs

The Medicare program is a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States

14

Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b). "Part D" of the Medicare program subsidized the costs of prescription drugs for Medicare beneficiaries in the United States. It was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 and went into effect on January 1, 2006. Part D benefits were administered by private insurance plans that were reimbursed by Medicare through CMS.

Beneficiaries could obtain Part D benefits in two different ways: they could join a Prescription Drug Plan which covered only prescription drugs; or they could join a Medicare Advantage Plan that covered both prescription drugs and medical services.

Under Part D, a pharmacy could contract with multiple private insurance plans or their Pharmacy Benefit Managers which provided Medicare Part D coverage but could also submit claims for payment to a private insurance plan with which it did not have a contract. The pharmacy would submit claims for prescription fills obtained by Medicare Part D beneficiaries.

Typically, a Medicare beneficiary enrolled in a Medicare Part D plan would fill their prescription at a pharmacy utilizing their Medicare Part D plan coverage to pay for the prescription. The pharmacy would then submit the prescription claim for reimbursement to the Medicare Part D beneficiary's Part D plan for payment under the beneficiary's Health Insurance Claim Number and/or Medicare Plan identification number.

Part B of the Medicare Program was a medical insurance program that covered, among other things, certain physician home and office visits, and other health care benefits, items, and services, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

By becoming a participating provider in Medicare Part B, enrolled providers agree to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

Upon certification, the medical provider, whether a clinic or an individual, is assigned a provider identification number for billing purposes (referred to as a "PIN"). When the medical provider renders a service, the provider submits a claim for reimbursement to the Medicare contractor/carrier that includes the PIN assigned to that medical provider. When an individual medical provider is associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

Health care providers were given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers can only submit claims to Medicare for services they rendered and providers must maintain patient records to verify that the services were provided as described

16

on the claim.

The Michigan Medicaid program ("Medicaid") was a federal and state funded program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in participating states, including Michigan. Individuals who received benefits under the Medicaid program were similarly referred to as "beneficiaries."

Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Among the specific medical services and products provided by Medicaid were reimbursements to pharmacies for the provision of prescription drugs. Generally, Medicaid covered these costs if, among other requirements, they were medically necessary and ordered by a physician.

In addition to Medicare and Medicaid, numerous private entities (collectively, "the private insurers"), also provided health insurance plans, affecting commerce, under which medical benefits, items, and services, were provided to individuals. Individuals who received benefits under private health insurance plans offered by the private insurers are similarly referred to as "beneficiaries."

The private insurers provided health insurance plans that constituted "health care benefit programs" as defined by Title 18, United States Code, Section 24(b) and referenced

in Title 18, United States Code, Section 1347.

The private insurers compensated medical service providers for medical services, including the provision of prescription drugs, that were actually rendered and were medically necessary.

To receive reimbursement from the private insurers, medical service providers submitted or caused the submission of claims, either electronically or in writing, to the private insurer for payment of services, either directly or through a billing company.

The manner and means of this conspiracy is set forth in the general allegations of this indictment, which are adopted and incorporated in this count.

All in violation of Title 18, United States Code, Sections 1347 and 1349.

## COUNT THREE
(18 U.S.C. § 1957- Monetary transactions in property
derived from specified unlawful activity)

### D-13 AHAB ELMADHOUN, R.Ph.

On or about August 11, 2008, in the Eastern District of Michigan, Southern Division, AHAB ELMADHOUN, R.Ph., defendant, did knowingly engage in a monetary transaction by and through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of U.S. currency in the amount of $156,000, such property having been derived from a specified unlawful activity, that is the unlawful distribution of prescription drug controlled substances and a conspiracy to commit that offense, in violation of 21 U.S.C. §§ 841(a)(1) and 846, as

18

set forth in detail in Count One and the general allegations of this indictment, which are incorporated by reference.

All in violation of Title 18, United States Code, Section 1957.

## COUNT FOUR
(18 U.S.C. § 1957- Monetary transactions in property
derived from specified unlawful activity)

**D-13 AHAB ELMADHOUN, R.Ph.**

On or about August 21, 2008, in the Eastern District of Michigan, Southern Division, AHAB ELMADHOUN, R.Ph., defendant, did knowingly engage in a monetary transaction by and through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of U.S. currency in the amount of $157,500, such property having been derived from a specified unlawful activity, that is the unlawful distribution of prescription drug controlled substances and a conspiracy to commit that offense, in violation of 21 U.S.C. §§ 841(a)(1) and 846, as set forth in detail in Count One and the general allegations of this indictment, which are incorporated by reference.

All in violation of Title 18, United States Code, Section 1957.

## COUNT FIVE
(18 U.S.C. § 1957- Monetary transactions in property
derived from specified unlawful activity)

**D-13 AHAB ELMADHOUN, R.Ph.**

On or about June 25, 2009, in the Eastern District of Michigan, Southern Division, AHAB ELMADHOUN, R.Ph., defendant, did knowingly engage in a monetary transaction

by and through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of U.S. currency in the amount of $46,550, such property having been derived from a specified unlawful activity, that is the unlawful distribution of prescription drug controlled substances and a conspiracy to commit that offense, in violation of 21 U.S.C. §§ 841(a)(1) and 846, as set forth in detail in Count One and the general allegations of this indictment, which are incorporated by reference.

All in violation of Title 18, United States Code, Section 1957.

## COUNT SIX
(18 U.S.C. § 1957- Monetary transactions in property
derived from specified unlawful activity)

**D-14 WALEED YAGHMOUR, R.Ph.**

On or about October 20, 2008, in the Eastern District of Michigan, Southern Division, WALEED YAGHMOUR, R.Ph., defendant, did knowingly engage in a monetary transaction by and through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of U.S. currency in the amount of $62,000, such property having been derived from a specified unlawful activity, that is the unlawful distribution of prescription drug controlled substances and a conspiracy to commit that offense, in violation of 21 U.S.C. §§ 841(a)(1) and 846, as set forth in detail in Count One and the general allegations of this indictment, which are incorporated by reference.

All in violation of Title 18, United States Code, Section 1957.

## COUNT SEVEN
(18 U.S.C. § 1957- Monetary transactions in property
derived from specified unlawful activity)

**D-14 WALEED YAGHMOUR, R.Ph.**

On or about May 7, 2009, in the Eastern District of Michigan, Southern Division,

WALEED YAGHMOUR, R.Ph., defendant, did knowingly engage in a monetary transaction

by and through or to a financial institution, affecting interstate or foreign commerce, in

criminally derived property of a value greater than $10,000, that is, the deposit of U.S.

currency in the amount of $50,000, such property having been derived from a specified

unlawful activity, that is the unlawful distribution of prescription drug controlled substances

and a conspiracy to commit that offense, in violation of 21 U.S.C. §§ 841(a)(1) and 846, as

set forth in detail in Count One and the general allegations of this indictment, which are

incorporated by reference.

All in violation of Title 18, United States Code, Section 1957.

## COUNT EIGHT
(18 U.S.C. § 1957- Monetary transactions in property
derived from specified unlawful activity)

**D-14 WALEED YAGHMOUR, R.Ph.**

On or about August 5, 2009, in the Eastern District of Michigan, Southern Division,

WALEED YAGHMOUR, R.Ph., defendant, did knowingly engage in a monetary transaction

by and through or to a financial institution, affecting interstate or foreign commerce, in

criminally derived property of a value greater than $10,000, that is, the deposit of U.S.

currency in the amount of $44,900, such property having been derived from a specified

unlawful activity, that is the unlawful distribution of prescription drug controlled substances

and a conspiracy to commit that offense, in violation of 21 U.S.C. §§ 841(a)(1) and 846, as

set forth in detail in Count One and the general allegations of this indictment, which are

incorporated by reference.

All in violation of Title 18, United States Code, Section 1957.

## COUNT NINE
(18 U.S.C. § 1957- Monetary transactions in property
derived from specified unlawful activity)

**D-12   SARDAR ASHRAFKHAN, a.k.a. "Dr. Khan"**

On or about July 23, 2010, in the Eastern District of Michigan, Southern Division,

SARDAR ASHRAFKHAN, a.k.a. "Dr. Khan," defendant, did knowingly engage in a monetary

transaction by  and through or to a financial institution, affecting interstate or foreign

commerce, in criminally derived property of a value greater than $10,000, that is, the

withdrawal of funds in the amount of $80,353.23, in the form of a cashier's check, which

was provided as partial payment to purchase real property in Warren, Michigan. The funds

were criminally derived property,  having been derived from a specified unlawful activity,

that is, health care fraud and conspiracy violations, in violation of 18 U.S.C. §§ 1347 and

1349; and the unlawful distribution of prescription drug controlled substances and a

conspiracy to commit that offense, in violation of 21 U.S.C. §§ 841(a)(1) and 846, as set

forth in detail in Counts One and Two and the general allegations of this indictment, which

are incorporated by reference.

All in violation of Title 18, United States Code, Section 1957.

## COUNT TEN
(18 U.S.C. § 1957- Monetary transactions in property
derived from specified unlawful activity)

**D-12  SARDAR ASHRAFKHAN, a.k.a. "Dr. Khan"**

On or about Ausust 31, 2010, in the Eastern District of Michigan, Southern Division,

SARDAR ASHRAFKHAN, a.k.a. "Dr. Khan," defendant, did knowingly engage in a

monetary transaction by  and through or to a financial institution, affecting interstate or

foreign commerce, in criminally derived property of a value greater than $10,000, that is, the

withdrawal of funds in the amount of $150,000.00, in the form of a cashier's check, which

was provided as partial payment to purchase a business.  The funds were criminally derived

property,  having been derived from a specified unlawful activity, that is, health care fraud

and conspiracy violations, in violation of 18 U.S.C. §§ 1347 and 1349; and the unlawful

distribution of prescription drug controlled substances and a conspiracy to commit that

offense, in violation of 21 U.S.C. §§ 841(a)(1) and 846, as set forth in detail in Counts One

and Two and the general allegations of this indictment, which are incorporated by reference.

All in violation of Title 18, United States Code, Section 1957.

## COUNT ELEVEN
(18 U.S.C. § 922(g)(1)-Felon in Possession of a Fiream)

**D-34  TONEY TAYLOR**

On or about April 19, 2010, in the Eastern District of Michigan, Southern Division,

the defendant, TONEY TAYLOR, after having previously been convicted of at least one

crime punishable by imprisonment for a term exceeding one year (felony offense), did

knowingly and unlawfully possess a firearm, that is, a Saiga 7.62 assault rifle, bearing serial

number H03600072, said firearm having previously traveled in interstate commerce, in violation of Title 18, United States Code, Section 922(g)(1).

**COUNT TWELVE**
(18 U.S.C. § 922(g)(1)-Felon in Possession of a Fiream)

**D-37 TROY IVORY**

On or about December 21, 2010, in the Eastern District of Michigan, Southern Division, the defendant, TROY IVORY, after having previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year (felony offense), did knowingly and unlawfully possess a firearm, that is, a Rohm .38 caliber revolver, bearing serial number FF372632, said firearm having previously traveled in interstate commerce, in violation of Title 18, United States Code, Section 922(g)(1).

**COUNT THIRTEEN**
(18 U.S.C. § 922(g)(1)-Felon in Possession of a Fiream)

**D-16 JOHN STEPHEN CHECK Jr.**

On or about March 24, 2011, in the Eastern District of Michigan, Southern Division, the defendant, JOHN STEPHEN CHECK Jr., after having previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year (felony offense), did knowingly and unlawfully possess firearms, that is, an Intratec Model AB-10, 9 mm firearm, bearing serial number A044377; a KBI Inc. Model SMC-380, .380 ACP semi-automatic handgun, bearing serial number 9332352; an AAL Model 75, 9mm firearm, bearing serial numberS7111; a Jennings J-22, .22LR semi-automatic handgun, bearing serial number 1010179; a Jennings Model 38, .32 caliber semi-automatic handgun, bearing serial

number 278518; a Taurus .38 Special, bearing serial number XF11493; a Cobray Model DD .45 caliber firearm, bearing serial number M00015852; a Colt King Cobra .357 Magnum revolver, bearing serial number KV5680; an unknown make/model rifle, bearing serial number J4426; an unknown make/model rifle, bearing serial number 67663; a Norinco SKS 7.62 rifle, bearing serial number 9324055; a Hi-Point Model 995, 9 mm rifle, bearing serial number E45533; a Cobray 9mm firearm, bearing serial number 94-0017114, and a GP WASR 10, 7.62 rifle, bearing serial number BU-3439-86, said firearms having previously traveled in interstate commerce, in violation of Title 18, United States Code, Section 922(g)(1).

### FORFEITURE ALLEGATIONS
(21 U.S.C. § 853; 18 U.S.C. §§ 924, 981, 982; 28 U.S.C. § 2461- Criminal Forfeiture)

1.     The allegations contained in Counts One through Thirteen of this Second Superseding Indictment are hereby incorporated by reference for the purpose of alleging forfeiture.

2.     Upon conviction of violating Title 21, United States Code, Sections 841(a)(1) and 846, as charged in Count One of this Second Superseding Indictment, pursuant to Title 21, United States Code, Section 853(a), the defendants charged in Count One shall forfeit to the United States: (a) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violations; and (b) any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations.

3.     Upon conviction of violating Title 18, United States Code, Section

25

1349, as charged in Count Two of the Second Superseding Indictment, pursuant to Title 18, United States Code, Sections 982(a)(7), 981(a)(1)(C), and Title 28, United States Code, Section 2461, the defendants charged in Count Two shall forfeit to the United States all property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

4.   Upon conviction of violating Title 18, United States Code, Section 1957, as alleged in Counts Three through Ten of the Second Superseding Indictment, defendant AHAB ELMADHOUN (Counts Three through Five), defendant WALEED YAGHMOUR (Counts Six through Eight), and defendant SARDAR ASHRAFKHAN (Counts Nine and Ten) shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in the violation of Counts Three through Eight, or any property traceable to such property.

5.   Upon conviction of violating Title 18, United States Code, Section 922(g)(1), as alleged in Counts Eleven and Twelve of the Second Superseding Indictment, defendant TONEY TAYLOR (Count Eleven), defendant TROY IVORY (Count Twelve), and defendant JOHN STEPHEN CHECK Jr. (Count Thirteen) shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461, the firearms and ammunition involved in the offense.  Specifically, the following firearms, and any ammunition involved, will be forfeited to the United States:

Count Eleven: One (1) Saiga 7.62 assault rifle, serial number H03600072;

Count Twelve: One (1) Rohm .38 caliber revolver, serial number FF372632;

26

Count Thirteen:

- One (1) Intratec Model AB-10, 9 mm firearm, bearing serial number A044377;
- One (1) a KBI Inc. Model SMC-380, .380 ACP semi-automatic handgun, bearing serial number 9332352;
- One (1) AAL Model 75, 9mm firearm, bearing serial numberS7111;
- One (1) Jennings J-22, .22LR semi-automatic handgun, bearing serial number 1010179;
- One (1) Jennings Model 38, .32 caliber semi-automatic handgun, bearing serial number 278518;
- One (1) Taurus .38 Special, bearing serial number XF11493;
- One (1) Cobray Model DD .45 caliber firearm, bearing serial number M00015852;
- One (1) Colt King Cobra .357 Magnum revolver, bearing serial number KV5680;
- One (1) unknown make/model rifle, bearing serial number J4426;
- One (1) unknown make/model rifle, bearing serial number 67663;
- One (1) Norinco SKS 7.62 rifle, bearing serial number 9324055;
- One (1) Hi-Point Model 995, 9 mm rifle, bearing serial number E45533;
- One (1) Cobray 9mm firearm, bearing serial number 94-0017114; and
- One (1) GP WASR 10, 7.62 rifle, bearing serial number BU-3439-86.

6.     If any of the property subject to forfeiture, as a result of any act or omission

of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided

without difficulty, the United States of America shall be entitled to forfeiture of substitute

property pursuant to Title 21, United States Code, Section 853(p).

7. Money Judgment:  Upon conviction of one or more of the violations alleged in Counts One through Ten of the Second Superseding Indictment, the convicted defendants shall be ordered to pay a sum of money representing the total amount of proceeds obtained as a result of their offenses, and/or a sum of money representing the total amount involved in their violation of 18 U.S.C. § 1957, or such amount as is proved at trial in this matter.

All pursuant to 21 U.S.C. § 853; 18 U.S.C. §§ 924(d), 981(a)(1)(C), 982(a)(1), 982(a)(7); 28 U.S.C. § 2461; and Federal Rule of Criminal Procedure 32.2.

THIS IS A TRUE BILL

s/GRAND JURY FOREPERSON

BARBARA L. McQUADE
United States Attorney

s/TERRENCE HAUGABOOK
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9157
Email: terrence.haugabook@usdoj.gov

s/WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9583
Email: wayne.pratt@usdoj.gov

Dated: January 10, 2013

# ORIGINAL

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>11-CR-20551 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008   [ ]

| **Companion Case Information** | **Companion Case Number:** 11-cr-20468 |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** Arthur J. Tarnow |
| ■ **Yes**   □ **No** | **AUSA's Initials:** _WFP_ |

**Case Title:** USA v.   FREDERICK JACKSON, ET AL.

**County where offense occurred :**   Wayne

**Check One:**     ■ **Felony**          □ **Misdemeanor**          □ **Petty**

_____Indictment/_____Information --- no prior complaint.
_____Indictment/_____Information - based upon prior complaint [Case number:   ]
  _X_ Indictment-- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:**  11-CR-20551          **Judge:**  Robert H. Cleland

- □  Original case was terminated; no additional charges or defendants.
- □  Corrects errors; no additional charges or defendants.
- □  Involves, for plea purposes, different charges or adds counts.
- ■  Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

See attachment

---

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

| January 10, 2013 | _Wayne F. Pratt_ |
|---|---|
| Date | WAYNE F. PRATT |

WAYNE F. PRATT
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone:  (313) 226-9583
Fax: (313) 226-2621
E-Mail address: wayne.pratt@usdoj.gov
Attorney Bar #:  P32528

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09

**ATTACHMENT FOR SECOND SUPERSEDING**
**INDICTMENT CRIMINAL COVERSHEET**

D-11   FREDERICK TILL JACKSON, a.k.a. "Big Fred,"
D-12   SARDAR ASHRAFKHAN, a.k.a. "Dr. Khan,"
D-13   AHAB ELMADHOUN, R.Ph.,
D-14   WALEED YAGHMOUR, R.Ph.,
D-15   DEEPAK KUMAR,
D-16   JOHN STEPHEN CHECK, Sr.,
D-17   DAVID VEZZOSSI,
D-18   DR. ADELFO PAMATMAT, M.D.,
D-19   DR. JOHN GERALT, D.O.,
D-20   DR. MALIK DABABNEH, M.D.,
D-21   DR. PAUL KELLY, M.D.,
D-22   DR. RAVI IYER, M.D.,
D-23   DR. MUHAMMAD AHMED,
D-24   TIMOTHY SPENCER, P.A.,
D-25   KRINA PATEL, R.Ph.,
D-26   SANJAY PATEL,
D-27   JAYSHRIBEN GANDHI, R.Ph.,
D-28   GUARANG GANDHI,
D-29   MOHAMMAD MIAN, a.k.a. "Omar"
D-30   FARAJ GHABAG,
D-31   JAVAR MYATT-JONES, a.k.a "Dr. Jones,"
D-32   TIFFANY WALKER, a/k/a "Mary Reed"
D-33   SIERRA WALKER, a/k/a "Tosha"
D-34   TONEY TAYLOR,
D-35   JIMMY FOSTER,
D-36   JAMES BLAKE,
D-37   TROY IVORY,
D-38   JACKIE RENEE IVORY,
D-39   ERIC HESTER,
D-40   ALFORNIA JOHNSON, a/k/a "Con", a/k/a "Alex" and "ShiCon"
D-41   COREY WILLIAMS, a/k/a "CoCo"
D-42   RONNIE MOSES, a/k/a "Red"
D-43   PHILIP BURNETT, a/k/a "Frank", and "Frank Burns"
D-44   GARLAND ARTHUR HOLMAN, a/k/a "G-Boy"
D-45   JAMALL GIBSON, a/k/a "Mal"
D-46   FELICIA JACKSON,
D-47   AYESHA McCRAY,
D-48   CHERISH LEWIS,
D-49   ROBERT SCOTT DIALS,
D-50   WILLIE DAVID JACKSON,  a/k/a "Lil' Dave"
D-51   LANCE HATTEN,

D-52   JOSH BARNES,
D-53   NATHAN REED, a/k/a "Reed"
D-54   WILLIAM ASHLEY SMITH, a/k/a "Cash"

CHARGES:

21 U.S.C.§§841(a)(1), 846
18 U.S.C.§1347, 1349
18 U.S.C.§1957
18 U.S.C.§922(g)(1)